IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

THOMAS SMITH,

                          Plaintiff,

          v.                                    Civil Action No.
                                                9:05-CV-1439 (LEK/DEP)

R.K. WOODS, *et al.*,

                          Defendants.

─────────────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

THOMAS SMITH, *pro se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO              MICHAEL G. McCARTIN, ESQ.
Office of Attorney General       Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

          Plaintiff Thomas Smith, a prison inmate who is proceeding *pro se*

and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C.

§ 1983 alleging deprivation of his civil rights.  In his complaint, plaintiff

asserts claims arising from the refusal of medical personnel at the Upstate
Correctional Facility ("Upstate") to continue a prescription for Seroquel, a
drug previously administered at other New York prisons to treat his
diagnosed mental disorder, as well as based upon multiple incidents,
involving confrontations between the plaintiff and both corrections officers
and cellmates, which he attributes to the defendants' failure to provide him
with the desired medication.  Plaintiff's complaint contains causes of
action for deliberate medical indifference, failure to protect, the use by
prison officials of excessive force, and retaliation, and seeks recovery of
compensatory damages for mental anguish and emotional distress.

Currently pending before the court is a motion filed by the
defendants seeking the entry of partial summary judgment.  In their
motion, defendants urge dismissal of certain of plaintiff's claims including,
*inter alia,* his medical indifference cause of action, both on the merits and
on the ground of qualified immunity.  Having carefully reviewed the record
in light of defendants' motion, which plaintiff has opposed, I find that each
of the points raised regarding the substance of plaintiff's claims contains
merit, and therefore recommend that defendants' motion be granted,
finding it unnecessary to address, as an alternative ground for dismissal,

2

the claim of qualified immunity raised by defendants Wurzberger, Crosier

and Amberman.

I.      BACKGROUND

        Plaintiff is and was at all times relevant to the claims set forth in his

complaint a prison inmate entrusted to the custody of the New York State

Department of Correctional Services ("DOCS").  *See generally*, Complaint

(Dkt. No. 1).[1]  In August of 2004, Smith was transferred from the Five

Points Correctional Facility ("Five Points") into Upstate, where the events

upon which his claims are based took place.  Wurzberger Decl. (Dkt. No.

50-5) ¶4 and Exh. A; *see also* Complaint (Dkt. No. 1) ¶ 30.

        Prior to his arrival at Upstate, plaintiff was diagnosed as suffering

from impulse control disorder ("ICD"), and Seroquel 150 mg was prescribed

as part of a treatment regimen for the disorder by medical practitioners

elsewhere within the DOCS system, including at Downstate Correctional

Facility, Rikers Island, and Five Points.  Wurzberger Decl. (Dkt. No. 50-5) ¶

4, 5-10; Complaint (Dkt. No. 1) ¶ 25.  Seroquel is an anti-psychotic

medication which operates to alter the actions of chemicals in the brain;

---

[1]      The contents of plaintiff's complaint are declared under penalty of perjury,
and therefore serves as the functional equivalent of an affidavit, for purposes of the record
in connection with defendants' summary judgment motion.  *See Franco v. Kelly*, 854 F.2d
584, 587 (2d Cir. 1998) (citations omitted); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.
1995).

among the approved uses of the drug is for treatment of schizophrenia and

bipolar mania.  *Id.* ¶ 5.  In light of potentially serious metabolic side affects

associated with the medication, however, according to Dr. Bezalel

Wurzberger, M.D., a psychiatrist employed by the New York State Office of

Mental Health – and a defendant in this action – Seroquel should rarely be

used to treat other conditions.  *Id.*

        At the outset of his stay at Upstate, plaintiff was seen on August 25,

2004 by Dr. Wurzberger through use of the DOCS TeleMed

videoconferencing system.  Wurzberger Decl. (Dkt. No. 50-5) ¶ 6 and Exh.

A.  Following that meeting Dr. Wurzberger concluded that plaintiff was not

psychotic, and that in his professional judgment Seroquel was not indicated

to treat his ICD.  Wurzberger Decl. (Dkt. No. 50-5) ¶ 7.  As an alternative

measure, Dr. Wurzberger prescribed Prozac 20 mg, an antidepressant

medication which is also used to treat individuals with ICD.[2]  *Id.* ¶ 9.

        Upset at the discontinuance of his prescription for Seroquel, plaintiff

refused to take his prescribed Prozac, beginning on September 10, 2004

---

[2]        The use of Prozac to treat ICD is based upon research disclosing a link between control of impulses and the neurotransmitter serotonin, a chemical agent secreted by nerve cells in the brain.  Wurzberger Decl. (Dkt. No. 50-5) ¶ 10.  Based upon that finding, researchers have concluded that selective serotonin reuptake inhibitors, such as Prozac, which are often used to treat depression, can prove effective in the treatment of ICD.  *Id.*

and continuing through September 20, 2004 with the exception of

September 13, 2004 and September 17, 2004 – two days on which,

plaintiff maintains, he accepted the medication.  Wurzberger Decl. (Dkt. No.

50-5) ¶ 12 and Exh. B; Plaintiff's Local Rule 7.1(a)(3) Responsive

Statement ¶ 28.[3]  Based upon his refusal to accept the Prozac, the

prescription for that drug was discontinued on September 20, 2004.

Wurzberger Decl. (Dkt. No. 50-5) ¶ 12.

On October 6, 2004, once again through the TeleMed system,

plaintiff met with Byung Kim, M.D., another board-certified psychiatrist

employed by the New York State Office of Mental Health.  Wurzberger Dkt.

(Dkt. No. 50-5) ¶ 13 and Exh. D.  When plaintiff informed Dr. Kim that the

basis for his refusal to accept his Prozac medication was his dislike for the

nurse who had administered it, Dr. Kim discussed the possibility of taking

Prozac from another nurse working on a different shift.  *Id.*  While plaintiff

initially agreed, he later refused to accept the medication.[4]  *Id.*

---

[3]      Plaintiff attributes his refusal to take Prozac not to the apparent disagreement
over the prescription of that drug to replace Seroquel, but rather to his dislike for defendant
Walsh, a registered nurse employed by Upstate and sent to administer the Prozac on the
dates of his refusal. Plaintiff's Local Rule 7.1(a)(3) Responsive Statement (Dkt. No. 52) ¶¶
28-31; Wurzberger Decl. (Dkt. No. 50-5) ¶ 13 and Exh. D.

[4]      Plaintiff attributes that failure to Dr. Kim not "keep[ing] his word" in failing to
order the medication.  *See* Plaintiff's Local Rule 7.1(a)(3) Responsive Statement ¶ 32.
That assertion, which appears in an unsworn document, is not supported by a sworn

According to the plaintiff, the failure of prison medical officials to adequately address and control his ICD precipitated several violent outbursts and instances of assaultive behavior on his part, directed toward both prison officials and several cellmates, leading on occasion to the use of excessive force by prison officials against him and his having to suffer disciplinary sanctions.  Complaint (Dkt. No. 1) ¶¶ 38-39, 53-66, 70-73. Despite having had more than five cellmates at different times in his double special housing unit ("SHU") cell at Upstate, according to the plaintiff his relationships with cellmates typically deteriorated quickly, generally ending in physical confrontation requiring the intervention of corrections officers.[5] *See*, *e.g.*, *id.* ¶¶ 53-66.

---

affidavit or other material having evidentiary value.  In any event the allegation implicates Dr. Kim and his alleged indifference to plaintiff's medical needs.  Since Dr. Kim is not a party to this action, and there is no allegation that Dr. Wurzberger was apprised of the failure of Dr. Kim to re-prescribe Prozac, it is unnecessary for a factfinder to resolve this potential factual discrepancy.

[5]    Prisoners are generally placed in SHU confinement for a variety of reasons, although most frequently for disciplinary reasons.  *Lee v. Coughlin,* 26 F. Supp. 2d 615, 618 (S.D.N.Y. 1998) (quoting, *inter alia,* 7 N.Y.C.R.R. § 301.6); 7 N.Y.C.R.R. § 301.7. Confinement within an SHU results in significant restrictions beyond those experienced in the general prison population.  *Husbands v. McClellan,* 990 F. Supp. 214, 217 (W.D.N.Y. 2008); *see also* 7 N.Y.C.R.R. pt. 304.  SHU inmates are permitted only two showers per week, and only one hour of outdoor exercise each day.  *Husbands*, 990 F. Supp. at 218*; see also* Complaint (Dkt. No. 1) ¶ 42.  Despite these restrictions, inmates within SHU units are entitled to unlimited legal visits as well as one non-legal visit per week.  *Husbands*, 990 F. Supp. at 218.  SHU inmates also have access to counselors and sick call, and additionally can participate in cell study programs and receive books from the prison library.  *Id.*

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on November 16, 2005.  Dkt. No. 1.

Named as defendants in Smith's complaint are R.K. Woods, the

Superintendent at Upstate; Corrections Lieutenant Canning; Corrections

Sergeant King; Corrections Officers T. Ramsdell, L. Russell, P. Burgess, B.

Brown and Mainville; Dr. Bezalel Wurzberger; E. Amberman, a licensed

clinical social worker ("LCSW") employed by the New York State Office of

Mental Health ("OMH") as a Treatment Team Leader; Wayne Crosier, an

OMH Psychologist; and Ms. Walsh, a Registered Nurse employed at

Upstate.  Plaintiff's complaint asserts four separate causes of action,

alleging 1) deliberate indifference on the part of defendants Wurzberger,

Amberman, Crosier, and Walsh to his physical safety and medical needs;

2) the failure of defendants Canning, Amberman, Woods, and Sergeant

King, to protect the plaintiff from harm; 3) the use of excessive force

against him by defendants T. Ramsdell, L. Russell, P. Burgess, B. Brown

and Mainville; and 4) unlawful retaliation by defendants Mainville, P.

Burgess, and Walsh, as well as by C.O. Labare, who is not a named

defendant in this action.  Issue was joined on May 18, 2006 by the filing of

an answer on behalf of the defendants, in which they deny having violated

7

plaintiff's civil rights and assert various affirmative defenses.  Dkt. No 38.

On June 7, 2007, following the close of discovery, defendants moved seeking entry of partial summary judgment.  Dkt. No. 50.  In their motion, defendants argue that 1) the record lacks evidence of any personal involvement on the part of defendants Woods and Canning in the conduct forming the basis of plaintiff's constitutional claims; 2) plaintiff's deliberate indifference claims against defendants Wurzberger, Crosier and Amberman are deficient as a matter of law; 3) the portion of plaintiff's retaliation claim asserted against defendant Walsh is subject to dismissal based upon the fact that the filing alone of a false misbehavior report is not actionable under section 1983; and 4) in any event those defendants now seeking dismissal are entitled to qualified immunity. *Id.*  Plaintiff has since responded to defendants' motion through the submission of a responsive statement pursuant to Local Rule 7.1(a)(3), accompanied by various exhibits, though with no supporting affidavit.  Dkt. No. 52.  Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    <u>DISCUSSION</u>

    A.    <u>Summary Judgment Standard</u>

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more

9

than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Personal Involvement

In their motion defendants first urge dismissal of plaintiff's claims against Superintendent Woods and Corrections Lieutenant Canning, based upon the lack of their personal involvement in the constitutional violations alleged.  In response, plaintiff consents to dismissal of his claims against Superintendent Woods, but objects to dismissal as against defendant Canning.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and conduct of the part of that particular

11

defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Both Superintendent Woods and Corrections Lieutenant Canning were supervisors at Upstate during the relevant time period.  This fact, however, does not obviate the need for the plaintiff to establish their involvement in the constitutional deprivations alleged; a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official's liability for a constitutional violation can be established in one of several ways, such as through a showing that 1) the supervisor directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, failed to remedy the wrong; 3) the supervisor created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor was grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, (2d Cir. 2007); *Richardson*, 347 F.3d at 435 ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.")

(quotations and citations omitted); *see also*, *e.g.*, *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same).

### 1. Superintendent Woods

Based upon the evidence now before the court it appears that defendant Woods's involvement in events giving rise to plaintiff's claims was limited to his having received a letter of complaint from Smith, ultimately delegating the responsibility for investigating the matter to Corrections Lieutenant Canning.  Complaint (Dkt. No. 1) ¶¶ 98, 100. Standing alone, these circumstances are insufficient to implicate the superintendent in any constitutional deprivations reported in plaintiff's letter. *See Mangual v. Wright*, No. 05-CV-6356, 2007 WL 1428443, at *7 (W.D.N.Y. May 9, 2007) (noting that the receipt of a letter of complaint from an inmate is insufficient to establish personal involvement under section 1983).

During his deposition, plaintiff was questioned regarding why Superintendent Woods was named as a defendant in his complaint; in response, Smith testified in essence that Woods was sued based upon his position as the highest ranking DOCS official at the facility. *See, e.g.,*

13

McCartin Decl. (Dkt. No. 50-3) Exh. A at 72-74.  This statement, coupled with the lack of any specifics in the record reflecting defendant Woods's awareness of the matters underlying plaintiff's claims, makes it clear that he is named as a defendant solely on the basis of *respondeat superior*, a theory of liability which does not lie under section 1983.  *See Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501.  Based upon the record, and in light of plaintiff's consent, I recommend that Smith's claims against defendant Woods be dismissed.

### 2.   Lieutenant Canning

Plaintiff's claim against defendant Canning appears to stem from the investigation carried out by that defendant, at the request of Superintendent Woods, into the allegations lodged by plaintiff in or about May of 2005. *See* Complaint (Dkt. No. 1) ¶ 97.  Plaintiff hypothesizes that had a proper investigation been conducted, Lieutenant Canning would have uncovered animus existing on the part of several corrections officers toward the plaintiff and, acting on that discovery, could have prevented the beating which, he alleges, he received at the hands of multiple corrections officers on May 24, 2005.[6]  *See, e.g.,* McCartin Decl. (Dkt. No. 50-3) Exh. A

---

[6]     Defendant Canning was not involved in the use of force against the plaintiff on May 24, 2005, nor was he present at the time.  McCartin Decl. (Dkt. No. 50-3) Exh. A at 67.

at 60-62.

The complaint which led to Lieutenant Canning's investigation, initially related to plaintiff' mental health treatment.  When making the complaint, however, plaintiff also recounted fears of paranoia regarding retaliation from officers.  McCartin Decl. (Dkt. No. 50-3) Exh. A at 59.  Lieutenant Canning questioned Smith concerning that allegation, and assured the plaintiff that if he was willing to commit to not becoming aggressive toward any corrections officers – which he apparently was – they would not respond in kind.  *Id.* at 60.

The use of excessive force which followed, plaintiff asserts, could have been avoided had defendant Canning taken proper measures, came after officers were summoned to the plaintiff's SHU cell to intercede and end an altercation between Smith and his cellmate.  McCartin Decl. (Dkt. No. 50-3) Exh. A at 60-61.  During the course of the fight, by his own admission, plaintiff was "pummeling [his cellmate] and . . . banging his head off the floor," "smacking it like a basketball. . .".  *Id.* at 81, 84. There is nothing in the record, other than plaintiff's conclusory allegations, to suggest that the response of corrections officers in breaking up the fight which, by plaintiff's own admission, involved his vicious assault on his cellmate, was excessive and unreasonable under the circumstances.

15

Similarly, the record discloses no basis to conclude that defendant Canning or other corrections officials knew, or that a proper investigation by defendant Canning would have disclosed, that the officers responding to that incident would exercise undue force when attempting to break up the fight.  Having scoured the relatively modest record now before the court, I can find no evidence from which a reasonable factfinder could conclude that Lieutenant Canning failed to conduct a proper investigation, and that such an investigation would have prevented the use of excessive force allegedly applied to the plaintiff by various corrections officers while ending an altercation between the plaintiff and his cell mate in May of 2005.  I therefore recommend dismissal of plaintiff's claims against Lieutenant Canning as well.

C.   Medical Indifference

    At the heart of plaintiff's complaint in this matter is his claim that through their actions, medical officials dealing with his treatment while at Upstate were deliberately indifferent to his serious medical needs. Asserting that plaintiff's complaint represents nothing more than his disagreement over the prescribed course of treatment for his diagnosed mental disorder, at most said to assert a claim of medical malpractice not cognizable under section 1983, defendants urge dismissal of plaintiff's

16

medical indifference claims against Dr. Wurzberger, the psychiatrist who opted to prescribe Prozac in place of Seroquel, as well as Psychologist Crosier and LCSW Amberman, both of whom deferred to Dr. Wurzberger's medical judgment on the question of what medication to prescribe for plaintiff's ICD.

Claims brought by prison inmates alleging indifference in connection with their medical treatment are analyzed generally under the Eighth Amendment.  The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment

17

must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference."  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it

18

presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted). A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*). Relevant factors in making this determination include injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or causes "'chronic and substantial pain.'" *Chance*, 43 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *2-*3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.).

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

19

Bypassing any discussion regarding whether plaintiff's ICD constitutes a serious medical need, defendants argue that in any event, none of the actions alleged by plaintiff on the part of defendant Dr. Wurzberger, Crosier, or Amberman rise to a level sufficient to support a claim that they were deliberately indifferent to any such need.  In response to defendants' motion, Smith argues that his prescription for Seroquel was part of a long-term comprehensive health plan for treatment of his ICD – although he provides no specifics regarding the other components of that plan – and argues that the medication of his choice is superior to Prozac which, he maintains, does not address his medical issues.

Reduced to its essence, plaintiff's medical indifference claim is an outgrowth of his disagreement with the treatment received for his ICD while at Upstate.  It should be noted, however, that while the Eighth Amendment guarantees that a prison inmate's serious medical needs will be met, it does not entitle an inmate to a particular treatment of choice.  *Polanco v. Dworzack*, 25 F. Supp. 2d 148, 151 (W.D.N.Y. 1998).  Consequently, it is well-established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143

20

F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  The question of what diagnostic techniques and treatments should be administered to an inmate is a "classic example of a matter for medical judgment"; accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998).

Plaintiff contends that this action involves more than simple disagreement with defendants' treatment of his disorder, arguing that the treatment provided did not address his medical needs and thus was the functional equivalent of a refusal to treat his medical need.  In the face of Dr. Wurzberger's declaration, in which he opines that Prozac is an appropriate alternative for treating ICD and indeed may be superior to Seroquel, with its potential for serious metabolic side affects, plaintiff provides nothing of evidentiary value to suggest otherwise.  In essence, his complaint boils down to nothing more than disagreement with the prescribed courses of treatment and his desire to be given the medication of his choice.  This, without more, is insufficient to avoid dismissal of plaintiff's claim; "[r]ather, to prevail on a claim involving choices between

alternative course of treatment a prisoner must show that the chosen

course of treatment 'was medically unacceptable under the circumstances,'

and was chosen 'in conscious disregard of an excessive risk to [the

prisoner's] health.'" *Toguchi v. Chung,* 391 F.3d 1051, 1058 (9th Cir. 2004)

(citing and quoting *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996)).

Based on these circumstances, I conclude that no reasonable factfinder

could conclude that defendant Dr. Wurzberger was deliberately indifferent

to plaintiff's serious medical needs.  As one court has noted:

> [M]edical officers have wide discretion in treating
> prisoners, and Section 1983 is not designated to
> permit federal courts to interfere in the ordinary
> medical practices of state prisons. *Church v.
> Hegstrom,* 416 F.2d 449, 450-451 (2d Cir. 1969).
> Federal courts are generally hesitant to second
> guess medical judgments and to constitutionalize
> claims which sound in state tort law. *Dean v.
> Coughlin,* 804 F.2d 207, 215 (2d Cir. 1986) ("The
> Constitution does not command that inmates be
> given medical attention that judges would wish to
> have for themselves.") So strong is this view that
> determinations of medical providers concerning the
> care and safety of patients are given a "presumption
> of correctness." *Perez v. The County of
> Westchester,* 83 F. Supp. 2d 435, 440 (S.D.N.Y.
> 2000) (citing *Kulak v. City of New York,* 88 F.3d 63,
> 77 (2d Cir. 1996)).

*Sonds v. St. Barnabas Hospital Corr. Health Servs.,* 151 F. Supp. 2d 303,

311 (S.D.N.Y. 2001).

22

Plaintiff's medical indifference claims against defendants Crosier and Amberman fare no better.  The essence of plaintiff's claims against those two individuals is his frustration over their failure to intercede on his behalf and override Dr. Wurzberger's refusal to prescribe Seroquel.  Plaintiff, however, has provided no evidence suggesting that defendant Amberman, an LCSW employed by the OMH, or defendant Crosier, a psychologist also working with that agency, had any authority to override the decision of OMH psychiatrist Dr. Wurzberger regarding the prescribed medication.  In any event, the record in the case is devoid of any evidence suggesting that either of those defendants knew, or reasonably should have known, that by not prescribing Seroquel Dr. Wurzberger was not appropriately treating plaintiff's ICD, but instead was engaged in deliberate indifference to his serious medical need.  Accordingly, those defendants are similarly entitled to dismissal of all medical indifference claims against them.[7]

### D.    Retaliation Claim Against Defendant Walsh

The last component of defendants' motion is addressed toward an allegation by the plaintiff against Nurse Walsh, accusing her of lodging a

---

[7]     Even if they were not entitled to dismissal of plaintiff's medical indifference claims against them as a matter of law, their reasonable, good faith reliance upon the medical judgment of Dr. Wurzberger would seemingly provide ample basis to find defendants Crosier and Amberman entitled to qualified immunity from suit.  *See Cuoco v. Moritsugu,* 222 F.3d 99, 111 (2d Cir. 2000).

fabricated misbehavior report against him.  *See* Complaint (Dkt. No. 1) ¶ 117.  Defendants assert that the filing of such a false disciplinary charge, without more, is not actionable.

It is true, as the defendants argue, that standing alone the mere allegation that a false misbehavior report has been filed against an inmate does not implicate constitutionally significant conduct.  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)).  Plaintiff's complaint, however, when liberally construed, could be interpreted as alleging that the misbehavior report was issued by Nurse Walsh for retaliatory reasons.  The further assertion that a false misbehavior report has been prompted by retaliatory animus, in response to an inmate having engaged in protected activity, can suffice to state a claim for retaliation.  *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).  This portion of plaintiff's claim must therefore be analyzed applying the test which ordinarily informs analysis of such retaliation claims.

In order to establish a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must prove that 1) he or she engaged in protected conduct; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected

24

activity and the adverse action – in other words, that the protected conduct

was a "substantial or motivating factor" in the prison officials' decision to

take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ.*

*v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*,

497 F.3d 247, 251 (2d Cir. 2007); *Dawes v. Walker*, 239 F.3d 489, 492 (2d

Cir. 2001), *overruled on other grounds*, *Phelps v. Kapnolas*, 308 F.3d 180

(2d Cir. 2002).  If the plaintiff carries this burden, the defendants must show

by a preponderance of the evidence that they would have taken action

against the plaintiff "even in the absence of the protected conduct."  *Mount*

*Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and

improper reasons, then, state action may be upheld if the action would

have been taken based on the proper reasons alone.  *Graham v.*

*Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

As can be seen, evaluation of claims of retaliation is a particularly

fact-laden exercise, since such claims revolve around both the engaging in

protected conduct, as well as establishment of a nexus between that

conduct and the adverse action ultimately taken.  *Cf. Zelnik v. Fashion Inst.*

*of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) (indicating that whether an

undesirable employment action is considered retaliatory or adverse is "a

heavily fact-specific, contextual determination").  In this instance plaintiff's

25

retaliation claim against Nurse Walsh has been alleged in only conclusory form, and is not supported by evidence establishing a nexus between any protected activity and the adverse action complained of.  Plaintiff's complaint does not specify, for example, the nature of his protected activity, nor does he provide any timeframe against which the court could evaluate the relevant circumstances in order to measure whether the alleged cause and effect were sufficiently proximate in time to permit a reasonable factfinder to conclude that the two are related.  Under these circumstances, I recommend a finding that the plaintiff has failed to establish the existence of a genuine issue of material fact, and that this portion of defendants' motion therefore similarly be granted.  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint in this action begins with a challenge of the decision of OMH medical officials, upon his transfer into Upstate, to discontinue his prescribed medication, Seroquel, in favor of Prozac, to treat his diagnosed ICD, and further addresses matters which, he asserts, are directly attributable to that failure.  Defendants' partial summary judgment motion challenges certain of plaintiff's claims, focusing principally upon the decision to change treatment regimens and discontinue the use of

Seroquel.  Because plaintiff's medical indifference claim represents little more than his disagreement with the treatment which he received for his disorder, and he has not submitted any competent evidence suggesting that the alternative course of treatment was patently inappropriate, his medical indifference claims against Dr. Wurzberger, as well as those against Psychologist Crosier and LCSW Amberman for their failure to intercede on his behalf and override the judgment of the licensed psychiatrist who prescribed Prozac, are subject to dismissal.  Similarly, plaintiff's claims against defendants Woods and Canning are deficient as a matter of law and subject to dismissal, based upon the lack of the requisite level of their personal involvement in the constitutional violations and deprivations alleged.  Additionally, plaintiff's claims against defendant Walsh alleging retaliation, based upon the filing of a false misbehavior report, are also subject to dismissal as not well-supported other than through plaintiff's conclusory allegations.  I therefore recommend that defendants' motion for summary judgment dismissing plaintiff's retaliation claims be granted.[8]

---

[8]      Based upon this recommendation I have not separately addressed the issue of qualified immunity – one of the grounds asserted by the defendants in support of their partial summary judgment motion.  *See Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151 (2001).

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for partial summary judgment (Dkt. No. 50) be GRANTED in its entirety, and that all of plaintiff's claims against defendants R.K. Woods, Lt. Canning, Dr. Bezalel Wurzberger, E. Amberman, Crosier and Walsh, RN be DISMISSED, and that the remaining claims set forth in plaintiff's complaint be set down for trial.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

Dated:      February 26, 2008
            Syracuse, NY


            David E. Peebles
            U.S. Magistrate Judge